IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

FILED
SEP 03 2010

MARK OERDING,

        Plaintiff,

v.

CV-08-633-PK

FINDINGS AND
RECOMMENDATION

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiff Mark Oerding filed this action against defendant Michael A. Astrue, Commissioner of Social Security, on May 27, 2008. Oerding sought review of the Commissioner's decision finding him not disabled for purposes of entitlement to Disability Insurance Benefits ("DIB"). On May 29, 2009, upon a stipulated motion for remand, I ordered that the Commissioner's decision be reversed and the action remanded to the Social Security Administration to conduct a de novo hearing, obtain explanatory documents and re-assess the medical evidence and witness statements. Oerding moved for an award of attorney fees pursuant to the Equal Access to Justice Act (the "EAJA"), and on August 8, 2009, I entered an award of attorney fees in Oerding's favor in the amount of $4,750.00. Now before the court is Oerding's motion (#26) for approval of additional payment of attorney fees out of Oerding's retroactive

Page 1 - FINDINGS AND RECOMMENDATION

benefits award, pursuant to 42 U.S.C. § 406(b). I have considered the motion and all of the evidence in the record. For the reasons set forth below, the motion should be granted, and payment to Oerding's counsel of $6,722.75 out of Oerding' past-due benefits award should be approved.

## ANALYSIS

I. **Motion for Attorney Fees**

Pursuant to 42 U.S.C. § 406(b), Oerding's counsel seeks the court's approval of payment to him of attorney fees out of Oerding' retroactive benefits award in the amount of $6,722.75 (calculated by subtracting $4,750, the amount of the EAJA attorney fee award counsel has already received, from $11,472.75, which counsel asserts constitutes 25% of Oerding's retroactive benefits award). Section 406(b) provides, in relevant part, as follows:

> Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment. . . .

42 U.S.C. § 406(b)(1)(A). By contrast with fees awarded pursuant to the EAJA, a fee-shifting statute, Section 406(b) fees are paid out of the retroactive benefits awarded to the successful Social Security claimant. *See id.* Counsel representing Social Security claimants may not seek compensation from their clients for trial litigation other than through a Section 406(b) fee. *See id.* In the event that both an EAJA fee is awarded and a Section 406(b) fee payment is approved, the claimant's counsel must refund to the claimant the amount of the smaller of the two payments. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002). Any Section 406(b) fee must be approved by the court following analysis of its reasonableness before it may be paid. *See* 42

Page 2 - FINDINGS AND RECOMMENDATION

U.S.C. § 406(b)(1)(A).

In *Gisbrecht*, the Supreme Court established that the reasonableness of a 406(b) contingency fee is not to be determined primarily by reference to the lodestar method which governs fee-shifting disputes. *See Gisbrecht*, 535 U.S. at 801-802. Instead, to the extent contingency fee agreements do not provide for fees exceeding 25% of claimants' retroactive benefits, their terms are fully enforceable subject only to the court's review "to assure that they yield reasonable results in particular cases." *Id.* at 807. It is the claimant's counsel's burden to establish the reasonableness of the calculated fee. *See id.*

In assessing the reasonableness of a Section 406(b) fee, courts look first to the contingency fee agreement itself, and then may reduce the resulting award "based on the character of the representation and the results the representative achieved." *Id.* at 808. The *Gisbrecht* court provided, as examples of circumstances that could justify a downward reduction, situations in which the attorney was responsible for delay or in which "the benefits are large in comparison to the amount of time counsel spent on the case." *Id.* The court specified that "the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases." *Id.*, citing *Rodriquez v. Bowen*, 865 F.2d 739, 741 (6th Cir. 1989) (*en banc*).

The Ninth Circuit recently issued an *en banc* decision, *Crawford v. Astrue*, 586 F.3d 1142 (9th Cir. 2009), addressing the Section 406(b) reasonableness analysis under *Gisbrecht*. The *Crawford* court reviewed the consolidated appeals of three different actions in which district

Page 3 - FINDINGS AND RECOMMENDATION

courts reduced Section 406(b) fees from the amounts requested. In the first of these, claimant Clara Crawford was represented by attorney Brian Shapiro. *See Crawford*, 586 F.3d at 1144. The Administration initially denied Crawford's application for benefits, but following litigation, ultimately awarded her $123,891.20 in past-due benefits. *See id.* at 1145. Although Shapiro and Crawford had entered into a contingency fee agreement that provided for a 25% contingency fee, Shapiro requested a fee of only $21,000, or 16.95% of Crawford's retroactive benefits, representing an amount 3.55 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Shapiro had caused no unnecessary delay, and that Shapiro's lodestar calculations were correct. *See id.* However, the district court found that Shapiro had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants (as opposed to data regarding the success rate of Social Security claimants generally) and because Crawford's attorneys' skill and experience were already reflected in the lodestar figure. *See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,270.00, the equivalent of 6.68% of Crawford's retroactive benefits. *See id.*

In the second action of the consolidated appeal, claimant Ruby Washington was represented by attorney Young Cho. *See id.* at 1144. As in Crawford's case, the Administration initially denied Washington's application for benefits, but following litigation, awarded $76,041.00 in retroactive benefits. *See id.* Although Cho and Washington had entered into a contingency fee agreement that provided for a 25% contingency fee, Cho requested a fee of only

Page 4 - FINDINGS AND RECOMMENDATION

$11,500, or 15.12% of Washington's retroactive benefits, representing an amount 1.82 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Cho had caused no unnecessary delay, and that Cho's lodestar calculations were correct. *See id.* at 1146. However, as for Crawford, the district court found that Cho had not met his burden to show that the requested "enhancement" of the lodestar figure was reasonable, because he had not presented evidence of his own firm's success rate in representing Social Security claimants, because Washington's attorneys' skill and experience were already reflected in the lodestar figure, and because Cho had not been required to do much work to obtain benefits on Washington's behalf. *See id.* The court ruled, without explanation, that a 40% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $8,825.53, the equivalent of 11.61% of Washington's retroactive benefits. *See id.*

In the third action of the consolidated appeal, claimant Daphne M. Trejo was represented by attorney Denise Bourgeois Haley. *See id.* at 1144. As in Crawford's and Washington's cases, the Administration initially denied Trejo's application for benefits, but following litigation, awarded $172,223.00 in retroactive benefits. *See id.* at 1146. Although Haley and Trejo had entered into a contingency fee agreement that provided for a 25% contingency fee, Haley requested a fee of only $24,000, or 13.94% of Washington's retroactive benefits, representing an amount 2.79 times the amount that would have resulted from a lodestar calculation. *See id.* The district court found no evidence of fraud or over-reaching in the negotiation of the fee agreement, that Haley had caused no unnecessary delay and that her representation had been excellent, and that Haley's lodestar calculations were correct, except that 1.5 hours of claimed paralegal time

Page 5 - FINDINGS AND RECOMMENDATION

and 1.4 hours of claimed attorney time had been improperly attributed to the federal action. *See id.* However, as for Crawford and Washington, the district court found that Haley had not met her burden to show that the requested fee was reasonable, because she had not presented evidence of her own firm's success rate in representing Social Security claimants, because Trejo's attorneys' skill and experience were already reflected in the lodestar figure, and because Haley had not presented evidence that Haley's firm had been precluded from accepting other work in consequence of Haley's representation of Trejo. *See id.* The court ruled, without explanation, that a 100% "enhancement" over the lodestar figure was reasonable, and on that basis awarded a fee of $12,650.40, the equivalent of 7.35% of Trejo's retroactive benefits. *See id.*

The *Crawford* majority characterized the district courts' decisions as impermissibly beginning with the lodestar calculation and determining a reasonable fee award by applying enhancements to the lodestar figure, rather than by beginning with the claimants' fee agreements and applying any appropriate reductions to the calculated contingency fees to arrive at reasonable fees. *See id.* at 1150. In addition, the *Crawford* majority found no evidence of substandard performance or dilatory conduct by the claimants' attorneys, and that the requested fees were not "excessively large in relation to the benefits achieved." *See id.* at 1151. On the basis of these findings, the *Crawford* majority found that the requested fees – each of which was less than the fee provided for in the applicable contingency fee agreement – were reasonable in each case, and therefore reversed each district court's decision with instructions to award the requested fees. *See id.* at 1151-1152.

As a separate and independently adequate ground for vacating the orders below, the *Crawford* court further noted the district courts' failure to explain the bases for the percentages

Page 6 - FINDINGS AND RECOMMENDATION

they found to constitute reasonable enhancements of the lodestar figure in each case. *See id.* at 1152. The *Crawford* court also flatly rejected the district courts' reliance on the attorneys' failure to provide firm-specific historical success rates as a basis for reducing the requested fee awards, and suggested that the reasonableness of a fee award could be measured in part by reference to the risk counsel assumed by agreeing to take on a particular case, given the specific facts of that case. *See id.* at 1152-1153.

Here, the Administration initially rejected Oerding's application for DIB benefits, only to award retroactive benefits following litigation. Oerding's counsel asserts that Oerding's retroactive benefits were awarded in the amount of at least $47,336.50.[1] Nevertheless, Oerding's counsel implicitly presupposes a somewhat lesser retroactive award amount in requesting attorney fees. Multiplying Oerding's counsel's requested 25% contingent fee by four yields a putative retroactive award amount of only $45,891.00, not the $47,336.50 mentioned by counsel in briefing. Thus, I accept for purposes of this motion that the retroactive benefits award was for $45,891.00, consistent with counsel's actual request. As in the cases reviewed by the *Crawford* and *Gisbrecht* courts, Oerding entered into a contingency fee agreement with his counsel providing for payment of 25% of Oerding' retroactive benefits to his attorney. It therefore now falls to me to assess whether $11,472.75 constitutes reasonable compensation for Oerding's counsel under the various factors discussed in *Gisbrecht* and *Crawford*.

---

[1] Oerding's counsel represents in his motion that he obtained "at least $47,336.50" in retroactive benefits for his client, referring to an attached Social Security Administration awards letter. However, either the award letter or its reproduction in the attachment apparently omits information concerning the rate of Oerding's retroactive benefits for the first five months of 2010, thus making an accurate calculation of the total retroactive award impossible.

Page 7 - FINDINGS AND RECOMMENDATION

### A. Character of the Representation

#### 1. Quality of Attorney Performance

As *Gisbrecht* and *Crawford* both make clear, substandard performance by a legal representative warrants a reduction in a Section 406(b) fee award. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, Oerding's counsel filed a substantial opening brief (#14) in this matter. In addition to discussing Oerding's medical history and the applicable legal standards, the brief included significant legal analysis applying case law to the record from the Administrative Law Judge hearing. Defendants did not file a reply brief and the parties stipulated that the case be reversed and remanded to conduct a de novo hearing. No reduction in the Section 406(b) fee is therefore warranted due to the character of Oerding's legal representation.

#### 2. Dilatoriness

A Section 406(b) award may properly be reduced if any delay in proceedings is properly attributable to the claimant's counsel. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Here, Oerding's counsel sought and received one 60-day extension of time due to a "very heavy work load and other conflicting deadlines" (#11), while defendants also sought and received a 31-day extension to enable settlement negotiations and accommodate defendant's counsel's schedule (#17). Although Oerding's counsel sought one extension, the record does not suggest that counsel was responsible for any unreasonable delay of these proceedings. No reduction in the Section 406(b) fee is warranted on the basis of dilatory performance.

### B. Proportionality of Benefits Awarded to Attorney Time Spent

The *Gisbrecht* and *Crawford* courts both held that a Section 406(b) award could be reduced if the benefits awarded to the Social Security claimant were out of proportion to the time spent by the claimant's attorney. *See Gisbrecht*, 535 U.S. at 808; *Crawford*, 586 F.3d at 1151. Although neither court's opinion provides significant guidance as to how to measure such disproportionality, *Gisbrecht* established, *see* 535 U.S. at 808, and *Crawford* affirmed, *see* 586 F.3d at 1151, that records of attorney time expended and a statement of the attorney's normal hourly fee in non-contingent matters could be considered in this connection, but only as an "aid" in assessing the reasonableness of the award provided in the contingency fee agreement.

Considered in isolation, the product of the lodestar calculation can at best be of extremely limited utility in assessing the reasonableness of a contingency fee. The lodestar method of calculating fees is designed for use where it is intended that an attorney be compensated strictly for time expended and not on the basis of results achieved, milestones reached, or any of the myriad other bases by which clients may permissibly compensate their legal representatives, and where the probability of nonpayment is both low and unrelated to the attorney's ultimate success or failure. By contrast, the method authorized under Section 406(b) is one designed to compensate attorneys commensurately with results achieved. As a matter of logic, the fact (standing alone) that a fee calculated according to the lodestar method differs from a fee calculated according to a contingency fee agreement is uninformative as to whether the contingency fee might be disproportionate.

Approaching the question from first principles, it is clear that the disproportionality analysis can have nothing to do with the absolute amount of the Section 406(b) fee requested,

Page 9 - FINDINGS AND RECOMMENDATION

since that fee is always a maximum of 25% of the retroactive benefits award, and must necessarily address primarily the effective requested hourly rate that may be back-derived by dividing the putative contingency award by the number of hours spent in pursuing it. Although that effective requested hourly rate cannot usefully be directly compared to a reasonable hourly fee to determine its proportionality, it is logically defensible to posit, at least in the abstract, that an effective requested hourly rate is not disproportionately high if it is less than or equal to the product of a reasonable hourly rate for non-contingent matters and the reciprocal of the pre-litigation probability that litigation would lead to a favorable result, based on the particular facts presented in a given case.[2] That is, an effective requested hourly rate cannot be disproportionately high if it does not overcompensate an attorney for the risk that attorney assumed at the time the representation was undertaken that the attorney would ultimately receive no compensation for his or her services. An attorney is not overcompensated for such risk if the pre-litigation expected value of the representation – the probability of a favorable result times the compensation that would be received in the event of a favorable result – does not exceed the product of the appropriate hourly rate and the expected number of hours required.

In addition to giving cognizable effect to the *Gisbrecht* court's suggestion that an attorney's normal hourly rate could bear materially on the disproportionality analysis and the *Crawford* court's suggestion that case-specific risk could be a material factor in assessing the reasonableness of a Section 406(b) fee, measuring the relationship between a reasonable hourly

---

[2] Thus, if $100 is a reasonable hourly rate of compensation for non-contingent matters, an effective requested hourly rate would not be disproportionate in light of the risk a particular contingency matter presented if, *e.g.*, the effective requested hourly rate did not exceed $400 where the probability of a favorable outcome was 25%, or one in four.

Page 10 - FINDINGS AND RECOMMENDATION

fee for non-contingent matters and the effective requested hourly rate by reference to the case-specific risk of an unfavorable result has the benefit of suggesting a potentially useful metric for assessing proportionality: a contingency fee award is disproportionately high where it disproportionately overcompensates for the pre-litigation risk of an unfavorable result. I therefore assess the proportionality of the fee requested in this action to the time expended in litigation by reference to this risk-assessment metric.[3]

Oerding's counsel expended 27.65 hours in connection with litigating Oerding's action for review of the commissioner's final decision. (App. for Fees, #22, Ex. 1). To give effect to the contingency fee arrangement in place between Oerding and his counsel would thus yield an effective hourly rate of $414.93 (the quotient of $11,472.75 and 27.65 hours is $414.93 per hour).

Oerding's counsel does not advise the court as to his normal hourly rate, if any, for legal representation in non-contingent matters. He does, however, represent in his motion that his expert witness and consulting fee for matters pertaining to Social Security Disability law is $300 per hour. Because consulting and expert testimony are sufficiently dissimilar to legal representation, I decline to treat $300 per hour as counsel's normal hourly rate for the disproportionality analysis suggested by *Gisbrecht*.

Instead, I take judicial notice that the Oregon State Bar Economic Surveys provide information as to rates prevalent in various Oregon legal communities in the years in which

---

[3] Oerding's counsel argues in favor of a different metric for determining proportionality, which posits that an effective hourly rate of $824.07 would be necessarily reasonable. Because his analysis addresses average compensation of Portland-area practitioners without regard to the reasonableness of compensation in this particular case, I reject his approach.

Page 11 - FINDINGS AND RECOMMENDATION

survey data are collected. I further take judicial notice that the Oregon State Bar 2007 Economic Survey provides information as to rates actually charged by Oregon attorneys in 2006. According to the 2007 Economic Survey, the median hourly rate charged by Portland-area attorneys practicing in "other" areas of private practice in 2006 was $222. An appropriate method for adjusting the foregoing rate for inflation in order to estimate the corresponding rates prevalent in the Portland legal community 2008 and 2009 when this action was litigated is to multiply the 2006 rate times the consumer price index for urban consumers ("CPI-U") for the years in which the fees were incurred, then dividing the resulting quotients by the CPI-U for 2006. I take judicial notice that the United States Department of Labor's Bureau of Labor Statistics has published a CPI-U for the Western states of 205.7 for 2006, 219.646 for 2008, and 218.822 for 2009.

Using this method, the estimated median hourly rates for legal services charged by Portland-area attorneys practicing in "other" areas of private practice would therefore be $237.05 in 2008 and $236.16 in 2009. The requested hourly rate of $414.93 is thus the equivalent of 1.75 times the estimated median hourly rate for 2008, and 1.76 times the estimated median hourly rate for 2009. The reciprocal of 1.75 is approximately 0.57 and the reciprocal of 1.76 is also approximately 0.57. Thus, the requested fee award would be clearly proportionate to the time spent if the pre-litigation risk of an adverse result was assessible at equal to or more than approximately 43%.

Ideally, a 406(b) fee petitioner would provide in support of his or her petition a statement of the attorney's normal hourly fee in non-contingent matters, some form of statement of the

Page 12 - FINDINGS AND RECOMMENDATION

attorney's pre-litigation assessment of the risk the attorney undertook in agreeing to represent the Social Security claimant that an unfavorable result would occur, resulting in no compensation for the attorney's services. Here, I have no information as to Oerding's counsel's pre-litigation assessment of the risk presented by Oerding's Social Security claim. In his motion, Oerding's counsel represents that he faced a substantial risk of non-payment because the case lasted over two years, because Oerding was a relatively young plaintiff (46 years old at the alleged onset of disability), and because Oerding's legal arguments mainly concerned the "notoriously difficult" issue of the credibility of allegedly "excess" symptoms. These assessments, however, are offered after the litigation has concluded and therefore do not reflect counsel's pre-litigation risk assessment.

From my own perspective as the judge to whom Oerding's request for judicial review was presented, I would rate Oerding's claim as significantly less risky than the average Social Security claim. However, because every legal action necessarily carries a degree of risk, and because every Social Security claimant faces a difficult burden in overcoming the deference to which an Administrative Law Judge's decision is entitled, I would estimate the risk of an unfavorable outcome that Oerding's counsel undertook at the time he agreed to represent his client as at or higher than 43%. On that basis, I conclude that compensation at an effective hourly rate of $414.93 would not disproportionately overcompensate Oerding's counsel for the risk Oerding's Social Security claim presented. I therefore conclude that reduction is not warranted in connection with the proportionality factor, taking into account the case-specific risks and the appropriate normal hourly rate for non-contingent matters.

Page 13 - FINDINGS AND RECOMMENDATION

### C. Appropriate Fee

For the foregoing reasons, I find that the contingency fee agreement in place between Oerding and his counsel is within the statutory limits provided in 29 U.S.C. § 406(b), and that the fee provided therein is reasonable. Oerding's motion for approval of Section 406(b) fees should be granted, and Oerding's counsel should be permitted to retain as a reasonable attorney's fee the total amount of $6,722.75 ($11,472.75 requested overall less $4,750.00 previously awarded pursuant to EAJA) from the gross amount of Oerding' retroactive benefits award.

### CONCLUSION

For the reasons set forth above, the motion (#26) for Section 406(b) attorney fees should be granted, and payment to Oerding's counsel of $6,722.75 out of Oerding's retroactive benefits award should be approved.

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections.

/
/
/
/
/
/
/
/

When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 2nd day of September, 2010.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge